UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROBIN B. YOUNG,

                    Plaintiff,

   -v-                                         1:12-CV-01150

CSX TRANSPORTATION, INC.,

                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| CHARLES C. GOETSCH LAW OFFICES LLC<br>Attorneys for Plaintiff<br>405 Orange Street<br>New Haven, CT 06511 | CHARLES C. GOETSCH, ESQ. |
| CAHILL, GOETSCH LAW FIRM<br>   NEW HAVEN OFFICE<br>Attorneys for Plaintiff<br>43 Trumbull Street<br>New Haven, CT 06510 | SCOTT E. PERRY, ESQ. |
| JONES, DAY LAW FIRM - DC OFFICE<br>Attorneys for Defendant<br>51 Louisiana Avenue, N.W.<br>Washington, DC 20001 | JACQUELINE M. HOLMES, ESQ.<br>RONALD M. JOHNSON, ESQ. |
| MCNAMEE, LOCHNER LAW FIRM<br>Attorneys for Defendant<br>677 Broadway<br>Albany, NY 12207 | SCOTT A. BARBOUR, ESQ. |

DAVID N. HURD
United States District Judge

**MEMORANDUM–DECISION and ORDER**

**I. INTRODUCTION**

Plaintiff Robin Young ("Young" or "plaintiff") filed this action against his employer, defendant CSX Transportation, Inc. ("CSX" or "defendant"), pursuant to 49 U.S.C. § 20109 et seq. (the "Federal Rail Safety Act" or "FRSA"), alleging that defendant violated the FRSA's anti-retaliation provisions when it terminated his employment after becoming aware that he had filed a complaint with the Occupational Safety and Health Administration ("OSHA").

Following the completion of discovery, CSX moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. The motion was fully briefed. Oral argument was heard on August 8, 2014 in Utica, New York. Decision was reserved.

**II. BACKGROUND**

CSX is a freight railroad company that employs approximately 35,000 people nationwide. See Def.'s Statement of Material Facts, ECF No. 39-20, ¶ 1 ("Rule 7.1 Stat.").[1] Defendant's numerous employees are organized into different "crafts" based on the type of work they perform. Id. Each of these crafts is represented by its own union; each union negotiates and maintains a separate collective bargaining agreement with defendant. Id. These union agreements are centrally administered through defendant's Labor Relations

---

[1] Facts cited from CSX's Statement of Material Facts have been admitted by Young in corresponding paragraphs of his response to same. See ECF No. 45. Although defendant correctly notes in its reply memorandum that plaintiff's filing, entitled "Plaintiff's Statement of Disputed Material Facts and Response to Defendant's Statement of Material Facts," does not comply with Local Rule 7.1(a)(3) in a number of respects and requests that the non-compliant portions be stricken, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted).

Department located at its Corporate Headquarters in Jacksonville, Florida. See id. ¶ 15; Pl.'s Opp'n, Ex. NN, ECF No. 44-6, 3-4 ("Second Nihoul Dep.").[2]

In 1998, CSX hired Young as a "trackman" in the Engineering Department at its Selkirk, New York facility. Rule 7.1 Stat. ¶ 2. Trackmen are responsible for maintaining and repairing the railroad tracks, and their craft is represented by the Brotherhood of Maintenance of Way Employees' union ("BMWE"). Id. Plaintiff successfully established seniority rights as a trackman in BMWE during this time.[3] Id. ¶ 3.

In late 2003, Young applied for and received a position as a "train dispatcher" in CSX's Transportation Department. Rule 7.1 Stat. ¶ 4. Because train dispatchers are members of a different craft, plaintiff also became a member of a different union—the American Train Dispatchers' Association ("ATDA"). Id. ¶ 5. However, plaintiff also maintained his seniority rights in BMWE by taking a "leave of absence" from his trackman duties and continuing to pay BMWE union dues. Id.; see also Pl.'s Opp'n, Ex. JT, ECF No. 44-5, 9 ("Second Tolin Dep.").

On September 14, 2009, Young was working as a train dispatcher when he was involved in an incident that nearly resulted in the collision of two passenger trains. See Johnson Decl., Ex. 1, ECF No. 39-7, 35-37 ("First Young Dep."). CSX and the Federal Railroad Administration ("FRA"), an independent federal regulator, conducted an investigation into the incident. See Compl. ¶ 11. Following this investigation, defendant determined that plaintiff's involvement in the near-collision warranted dismissal, and on

---

[2] Specific page numbers cited in this decision reflect the pagination assigned by CM/ECF.

[3] The collective bargaining agreement governing seniority rights for Young and other trackmen during the relevant time period is the June 1, 1999 System Agreement between CSX and BMWE. Rule 7.1 Stat. ¶ 3; Pl.'s Opp'n, Ex. 46, ECF No. 44-2, 22-72.

October 8, 2009, defendant mailed plaintiff a letter informing him of its decision.[4]  Rule 7.1 Stat. ¶ 6; Nihoul Aff., Ex. 2, ECF No. 39-3 (the "Dismissal Letter").

Several months later, Young filed a complaint with OSHA, the federal agency responsible for investigating and enforcing whistleblower protections found in the FRSA.  Pl.'s Opp'n, Ex. 1, ECF No. 44-1, 4 (the "OSHA Complaint").  Plaintiff's OSHA Complaint alleged that CSX had instructed plaintiff "to accept full responsibility" for the near-collision and "to refrain from providing extensive testimony about [ ] related safety issues" during a formal hearing with the FRA.  Id.  The complaint further alleged that plaintiff's dismissal as a train dispatcher was in retaliation for failing to follow these directives and instead choosing to report various safety issues.  Id.

On March 2, 2010, after his dismissal and while this OSHA complaint was still pending, Young attempted to exercise the seniority rights he had maintained in BMWE during his leave of absence to "displace" an employee with less seniority and return to work as a trackman.[5]  Rule 7.1 Stat. ¶¶ 13-14.  Plaintiff contacted the Engineering Department at Selkirk and spoke to Staff Engineer Chris Lorensen ("Lorensen") about how to complete this displacement procedure.  Id. ¶ 14.  Lorensen consulted an electronic database that revealed plaintiff had previously been "dismissed" from employment.  Pl.'s Opp'n, Ex. CL, ECF No. 44-4, 12-13 ("Second Lorensen Dep.").  However, Lorensen knew that "you can be dismissed as a [train] dispatcher and not necessarily dismissed in all capacities" and decided

---

[4]  ATDA, on behalf of Young and in accordance with its collective bargaining procedures, appealed CSX's decision to an arbitration panel.  Rule 7.1 Stat. ¶ 7.  On April 20, 2011, the arbitration panel upheld plaintiff's dismissal.  Id.

[5]  BMWE members are "constantly exercising seniority to displace into other positions" and "approximately 2,250 displacements occur annually."  Nihoul Aff., ECF No. 39-1, ¶ 10.

to seek guidance from John Tolin ("Tolin"), one of the Managers in defendant's Labor Relations Department who bore responsibility for interpreting the BMWE agreement and its seniority provisions. Id.; Second Tolin Dep. 7.

Tolin reviewed the Dismissal Letter, which stated only that Young had been "dismissed from the service of CSX." See Dismissal Letter. Tolin was unsure about the effect of this language and decided to meet with Noel Nihoul ("Nihoul"), his direct supervisor, to discuss the issue. Second Tolin Dep. 11. During the relevant time period, Nihoul was the "Director of Labor Relations—Engineering" and the "highest designated officer" in charge of negotiating, interpreting, and applying the BMWE labor agreement's various provisions. See Second Nihoul Dep. 4. Nihoul reviewed the Dismissal Letter, agreed that its language was ambiguous, and instructed Tolin to contact defendant's Law Department for clarification.[3] See Second Tolin Dep. 11-12.

Tolin e-mailed CSX Law Department attorney Sarah Hall ("Hall"), who forwarded his request to Law Department attorneys David Hoffman ("Hoffman") and Jim Tomola ("Tomola"). Second Tolin Dep. 12; Pl.'s Opp'n, Ex. 5, ECF No. 44-1, 18. Hoffman responded to Tolin by e-mail on March 10, 2010 and indicated that because the Dismissal Letter "is arguably ambiguous as to whether it applies to all crafts, [he did] not think it would support denying [Young] the right to exercise his seniority." Pl.'s Opp'n, Ex. 7, ECF No. 44-1, 22. Tolin then informed Lorensen that plaintiff would be allowed to return to work, and Lorensen passed this news along to plaintiff on March 11, 2010, the very next day. Rule 7.1 Stat. ¶ 18.

---

[3] Nihoul testified that he does not recall being shown a copy of the Dismissal Letter during this meeting or ever instructing Tolin to seek guidance from the Law Department. See Second Nihoul Dep. 10-11.

Meanwhile, a copy of Young's OSHA Complaint had been mailed to CSX's Corporate Headquarters, where a mail clerk signed for it on March 15, 2010 and internally forwarded it to the Law Department.[4]  Rule 7.1 Stat. ¶ 9.  The parties dispute exactly when and how the Law Department became aware of plaintiff's OSHA Complaint, but on March 16, 2010, Law Department attorney Kathryn Barney ("Barney") sent an e-mail to several fellow attorneys, including Hall and Tomola, regarding plaintiff's OSHA Complaint.  See Pl.'s Opp'n, Ex. 65, ECF No. 44-3, 81.  Barney's e-mail set off a flurry of correspondence on March 16 and 17 between a number of different attorneys, paralegals, and secretaries at the Law Department as well as two different attorneys employed by defendant's outside counsel.  Id. 81-83.

On March 17, 2010, Young returned to work as a trackman at CSX's Selkirk facility.  Rule 7.1 Stat. ¶ 19.  That same afternoon, Nihoul alerted Assistant Vice President of Labor Relations Kenneth Mason ("Vice President Mason"), Nihoul's direct supervisor, to plaintiff's recent displacement as a trackman.  Nihoul forwarded Vice President Mason a chain of e-mail messages between Lorensen, Tolin, Hoffman, Hall, and Jenn Rimer ("Rimer"), another Labor Relations Manager, detailing plaintiff's successful return.  See Pl.'s Opp'n, Ex. 56, ECF No. 44-3, 2.  Later that evening, Nihoul telephoned Tolin and instructed him to tell plaintiff he should not come to work until further notice.  Rule 7.1 Stat. ¶¶ 26-27.

The next morning, March 18, 2010, Nihoul met with Tolin in his office and explained that he had personally reviewed Young's situation and determined plaintiff had forfeited his seniority rights by failing to displace within a ten-day time limit required in the BMWE agreement.  See Johnson Decl., Ex. 2, ECF No. 39-8, 20 ("First Tolin Dep."); Second Nihoul

---

[4] OSHA investigations of FRSA complaints begin with a letter to the employer informing it of the nature of the alleged violation, a demand for a written position statement, and a copy of the employee's complaint.  ECF No. 44-1, 2.

Dep. 11. Nihoul instructed Tolin to draft a letter explaining that plaintiff's leave of absence from BMWE had ended on October 8, 2009, when he was dismissed as a train dispatcher, and that his exercise of seniority on March 2, 2010 was therefore outside this ten-day time limitation (the "Seniority Letter"). Id.

On Friday, March 19, 2010, Vice President Mason also e-mailed Tolin with instructions to "[s]ee me on Mr. Young." First Tolin Dep. 20. Tolin met with Vice President Mason that morning, brought him "up to speed" on plaintiff's displacement, and explained that Nihoul had directed him to draft the Seniority Letter. Second Tolin Dep. 19. That same day, Shannon Farling ("Farling"), a Labor Relations Director for a different CSX department, forwarded an e-mail from Salvatore Macedonio ("Macedonio"), yet another Labor Relations Director, to Vice President Mason indicating that "it would be fairly easy to argue" that plaintiff's Dismissal Letter "equals dismissed in all capacities." See Pl.'s Opp'n, Ex. 24, ECF No. 44-2, 6. That evening, Tolin e-mailed a draft of the Seniority Letter to Nihoul for review. Second Tolin Dep. 21.

On Sunday, March 21, 2010, Nihoul transmitted a revised draft of the Seniority Letter to Tolin, instructing him that "if there are no objections or concerns from either [Vice President Mason] or [Farling], please mail the attached [Seniority Letter] as soon as possible." See Pl.'s Opp'n, Ex. 26, ECF No. 44-2, 14. Following this internal approval, Tolin mailed the Seniority Letter to Young on March 22, 2010.[5] Id. at 15.

---

[5] BMWE, on behalf of Young and in accordance with its collective bargaining procedures, appealed plaintiff's dismissal to an arbitration panel. In April 2011, the arbitration panel sustained BMWE's claim and reinstated plaintiff without reaching the propriety of CSX's application of the ten-day time limitation in the collective bargaining agreement's. The panel concluded that defendant had waived any argument regarding plaintiff's seniority status by permitting him to return to work as a trackman on March 17, 2010. See Second Tolin Dep. 11.

## III. LEGAL STANDARDS

### A. Motion for Summary Judgment

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Id. at 250 n.4. The failure to meet this burden warrants denial of the motion. See id. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the non-moving party. Jeffreys, 426 F.3d at 553. Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citations omitted); see also Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

**B. Federal Rail Safety Act**

The FRSA's broad, general purpose is "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. Historically, complaints by rail employees alleging retaliation based on whistleblowing activities, such as reporting safety issues, were subject to mandatory dispute resolution. See Araujo v. N.J. Transit Rail Operations, Inc., 708 F.3d 152, 157 (3d Cir. 2013) (citing 75 Fed. Reg. 53,523 (Aug. 31, 2010)).

In 2007, Congress substantially amended the FRSA to include additional anti-retaliation provisions and a federal cause of action. See 49 U.S.C. § 20109. The amended FRSA states that a rail carrier "may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part" to the employee's protected activity. § 20109(a). "The 2007 amendments . . . also specifically eliminated the . . . [mandatory] arbitration process, instead transferring authority to investigate and adjudicate such complaints to the Secretary of Labor." Norfolk S. Ry. Co. v. Solis, 915 F. Supp. 2d 32, 38 (D.D.C. 2013) (citation omitted). Although aggrieved employees must initially file an administrative complaint with OSHA, a plaintiff may nevertheless bring an action in federal court "if the [agency] has not issued a final decision within 210 days after the filing . . . and if the delay is not due to the bad faith of the employee." § 20109(d)(3).

Claims brought under these expanded protections are subject to the same two-part burden-shifting test applicable to whistleblower cases brought pursuant to the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR-21"). § 20109(d)(2)(A); Araujo, 708 F.3d at 157 (noting the FRSA "incorporates by reference [AIR-21's] rules and

procedures"). This burden-shifting framework requires an employee to first show by a preponderance of the evidence that: (1) he engaged in protected activity; (2) the employer knew of the protected activity; (3) he suffered an adverse employment action; and (4) the protected activity was a contributing factor in the decision. Araujo, 708 F.3d at 157. Once a plaintiff makes this prima facie showing, the burden shifts to the employer to show "by clear and convincing evidence, that [it] would have taken the same unfavorable personnel action in the absence of that behavior." § 42121(b)(2)(B)(ii).

## IV. **DISCUSSION**

This motion centers on a dispute between the parties over what Young must show to establish the second element of his prima facie case: employer knowledge. CSX concedes that plaintiff's OSHA Complaint constitutes protected activity and that its decision to remove him as a trackman is an adverse employment action. See Def.'s Mem. 6. However, defendant maintains that "Nihoul alone decided that [plaintiff] had forfeited his seniority rights" and that plaintiff "cannot point to any facts establishing that [Nihoul] was aware" of plaintiff's OSHA Complaint at the time the unfavorable decision was made. Def.'s Mem. 21. Defendant contends that since plaintiff "cannot show [employer knowledge] of his protected activity, it is not possible for that protected activity to have influenced" the decision to remove him. Id. 23.

Young contends that such a particularized showing is unnecessary to defeat summary judgment. Pl.'s Opp'n Mem. 24. Plaintiff identifies a number of individuals in defendant's Corporate Office and Law Department who were aware of his OSHA Complaint just before Vice President Mason became involved and Nihoul seemingly reversed course on the

- 10 -

seniority issue. Plaintiff argues that these facts, considered with other circumstantial evidence in the record, necessitate denial of defendant's motion. Id. 31-36.

Where, as here, the non-moving party has the burden of proof on a specific issue, the moving party may satisfy its summary judgment burden by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim." Doona v. OneSource Holdings, Inc., 680 F. Supp. 2d 394, 399 (E.D.N.Y. 2010) (quoting Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995)). To avoid summary judgment, the opposing party "must [then] show the presence of a genuine issue by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in his favor, to establish the existence of that element at trial." United States v. Rem, 38 F.3d 634, 643 (2d Cir. 1994) (citations omitted).

The Second Circuit has not yet analyzed AIR-21's burden-shifting framework in the context of a whistleblower retaliation claim brought pursuant to the FRSA.[6] Indeed, "[s]ince the 2007 amendments, only one court has undertaken significant analysis of the elements needed to sustain a claim under the FRSA." Ray v. Union Pac. R.R. Co., 971 F. Supp. 2d 869, 881 (S.D. Iowa 2014). And although useful guidance can be found in that court's analysis, the critical element at issue here—what constitutes sufficient evidence of employer knowledge to create a material issue of fact for trial—was not at issue there. See Araujo, 708 F.3d at 157 n.4. Consequently, the parties resort to different bodies of case law to support their arguments.

---

[6] The Second Circuit has analyzed AIR-21's burden-shifting framework in other contexts. See, e.g., Bechtel v. Admin. Review Bd., U.S., Dep't of Labor, 710 F.3d 443, 447 (2d Cir. 2013) (applying AIR-21's framework to a whistleblower retaliation claim brought pursuant to the Sarbanes-Oxley Act).

For his part, Young focuses on the "markedly less demanding" contributing factor element of the FRSA and emphasizes that this standard is more permissive than the causation requirement for retaliation claims brought pursuant to Title VII of the Civil Rights Act of 1964. Plaintiff relies on Second Circuit precedent discussing those claims to argue that general corporate knowledge is sufficient to sustain a prima facie claim of retaliation under the FRSA. See Pl.'s Mem. 25, 27-29 (citing e.g., Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000)). Plaintiff also cites directly to a decision issued by the Department of Labor's Administrative Review Board ("ARB") reversing the dismissal of an FRSA retaliation claim to support his contention that direct evidence of Nihoul's knowledge is unnecessary.[7] See Rudolph v. Nat'l R.R. Pass. Corp., 2013 WL 1647527, at *11 (DOL Adm. Rev. Bd. 2013) (noting that "[t]he ALJ's exclusive focus on the knowledge possessed by the final responsible decision-maker constitutes error as a matter of law" because "proof that an employee's protected activity contributed to the adverse action . . . . may be established through a wide range of circumstantial evidence, including the acts or knowledge of a combination of individuals involved in the decision-making process").

For its part, CSX argues that Young's analysis is "exactly backwards." Def.'s Reply Mem. 9. Defendant contends that plaintiff cannot rely on Second Circuit precedent involving Title VII retaliation claims because a prima facie claim for retaliation under the FRSA, governed by the "preponderance of the evidence" standard, is far more demanding than the "de minimis" burden imposed by the McDonnell Douglas burden-shifting framework. Id. Defendant acknowledges the ARB's decision in Rudolph, but argues that it stands for the

---

[7] The ARB adjudicates administrative appeals from OSHA whistleblower complaints brought pursuant to the same provisions of the FRSA at issue here.

more limited proposition that a plaintiff is not required to show actual decision-maker knowledge only when agents who are aware of a plaintiff's protected activity advise the individual ultimately responsible for the adverse action. Id. 14; see also 2013 WL 1647527, at *12 ("Proof of a contributing factor may be established by evidence demonstrating 'that at least one individual among multiple decision-makers influence the final decision and acted at least partly because of the employee's protected activity.'" (footnote omitted)).

In sum, CSX relies heavily on the undeniably favorable fact that Nihoul has consistently testified that he was unaware of plaintiff's OSHA Complaint as well as a seemingly missing link in plaintiff's proof—that he "cannot point to any e-mails or other documents" to directly show Nihoul's awareness of his protected activity. Defendant maintains that although attorneys in the Law Department were generally responsible for advising managers and directors in the Labor Relations Department, Nihoul's decision was made and finalized without consulting the Law Department attorneys or anyone else who was aware of plaintiff's OSHA Complaint.

"Knowledge is a fact often established—even in criminal cases where the prosecution's burden is beyond a reasonable doubt—simply through circumstantial evidence." Woodman v. WWOR-TV, Inc., 411 F.3d 69, 84 (2d Cir. 2005) (collecting cases) (internal quotation marks omitted). Indeed, "[d]irect evidence of [retaliation], 'a smoking gun,' is typically unavailable . . . . [because] employers are rarely so cooperative as to include a notation in [a] file that the firing is for a reason expressly forbidden by law." Holcomb v. Iona Coll., 521 F.3d 130, 141 (2d Cir. 2008). Whether general corporate knowledge is sufficient, as Young urges, or specific decision-maker knowledge is required, as CSX maintains, summary judgment would be inappropriate on this record.

Here, Tolin testified that Nihoul instructed him to request guidance regarding the Dismissal Letter and that the Law Department's position on the seniority issue "would be the [final] decision."  Second Tolin Dep. 12.  Tolin then solicited that guidance from Hoffman, who indicated that plaintiff's displacement would not be prohibited.  However, on March 17—a single day after Hall, Tomola, and a number of other Law Department employees engaged in significant e-mail correspondence regarding receipt of plaintiff's OSHA Complaint and nearly a week after plaintiff's ability to displace had seemingly been settled by the Law Department—Nihoul reversed course, Vice President Mason became involved, and an unfavorable decision was issued after other members of management weighed in over a period of several days.

Viewing these facts in Young's favor, a reasonable jury could find that Nihoul's initial decision to defer to the Law Department's determination was reversed in retaliation for plaintiff's OSHA Complaint once members of defendant's upper management became aware of it.  This is especially so given that:  (1) the various departments at CSX's Corporate Office were in regular communication by phone and in-person; (2) at the very least, attorneys Hall and Tomola were aware of both plaintiff's displacement and his OSHA Complaint; and (3) Farling and Macedonio, Labor Relations Directors for other departments, became involved with whatever knowledge they possessed when Farling forwarded Macedonio's e-mail to Vice President Mason suggesting a possible justification for plaintiff's dismissal.

And while it is true that Nihoul initially instructed Tolin to tell Young not to return to work "until further notice," the final decision that plaintiff would not be permitted to exercise his seniority was not made until five days later, on March 22, 2010, when the Seniority Letter Tolin drafted at Nihoul's behest was finally approved by Vice President Mason after he

- 14 -

received input from Nihoul, Tolin, Farling, Macedonio, and others. A jury is certainly free to consider the timing and substance of all of these events before accepting or rejecting CSX's claim that one hand was completely unaware of what the other was doing. See Woodman, 411 F.3d at 84 ("[I]n drawing inferences of knowledge from circumstantial evidence, a fact finder is not required to operate in an experiential vacuum. To the contrary, he may draw on the full range of his reason, experience, and common sense." (citation and footnote omitted)).

Given this circumstantial evidence of knowledge and mindful that the "contributing factor" element of the FRSA is "any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision," CSX's course of action under these circumstances could support a potentially favorable jury determination on that issue as well. See Araujo, 708 F.3d at 160 (holding that neither direct evidence nor evidence of motive is required to prove the contributing factor element); Davis v. Union Pac. R.R. Co., No. 5:12-CV-2738, 2014 WL 3499228, at *9 (W.D. La. July 14, 2014) (holding temporal proximity alone sufficient to create a genuine dispute of material fact as to this element); see also Kewley v. Dep't of Health and Human Servs., 153 F.3d 1357, 1362 (Fed. Cir. 1998) (stating that under the Whistleblower Protection Act, "circumstantial evidence of knowledge of the protected [activity] and a reasonable relationship between the time of the protected [activity] and the time of the personnel action will establish, prima facie, that the [activity] was a contributing factor to the personnel action"). Accordingly, defendant's motion for summary judgment will be denied.

## V.  CONCLUSION

"FRSA burden-shifting is much more protective of plaintiff-employees than the McDonnell Douglas framework."  Araujo, 708 F.3d at 158.  Young has identified sufficient circumstantial evidence in the record to create genuine disputes of material fact as to the challenged elements of his FRSA claim.  As the Third Circuit aptly noted in Araujo, such "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."  708 F.3d at 161 (citation omitted).

Therefore, it is

ORDERED that

CSX Transportation Inc.'s motion for summary judgment is DENIED.

IT IS SO ORDERED.

United States District Judge

Dated:  September 4, 2014.
         Utica, New York.